The next matter, number 23-1354, number 3137, LLC, et al, versus Town of Harwich, et al. At this time, would counsel for Appellants 3137 please introduce himself on the record to begin? Good morning, Your Honors. Ray Tomlinson on behalf of the Plaintiff Restaurants and their ownership group. May it please the Court if I may have four minutes for rebuttal? You can have three. Three. Thank you. Quickly, Your Honor, this case can be summarized in Plaintiff's request that the dismissal entered by the District Court was in error for three principal reasons. The first is that a fair reading of the amended complaint, and I'll start by saying that the amended complaint in this case, Your Honor, is really the first complaint, the operative complaint. Because the way the procedural posture unfolded is that the action was initially filed in the District Court at a time when the Board had not acted. So all of the factual affirmance regarding motive and intent and malevolent purpose go towards a retaliation claim that was a result of a manifestation of action. And that is how the First Amendment complaint came into order. So the First Amendment complaint, as of right, was filed within 20 days of providing under the rule after the Board took action. It was before it was served and otherwise. And the plaintiffs were not afforded the opportunity by the District Court once the District Court had sort of issued its order and specific instructions as to what additional evidence would help fill the inferential gaps that the District Court believed were necessary to sustain the claims. And so it is the plaintiff's view, appellant's view in this case, that the complaint meets Rule 8's notice pleading standard, first and foremost. And that secondly, in order to trigger and engage the gears of a Section 1983 claim, the focus is not on particular facts that support an element or a cause of action. The focus is necessarily on the actual conduct that occurs under the color of state law and what gives rise to that conduct and what is the basis or the motive behind that conduct. Not the particular tort or the elements of that tort that are made out by those facts. And a view of the totality of the circumstances as specifically alleged in the complaint suggests that there is, plausibly suggests, getting over the hurdle of something, this is not atmospheric evidence, there's more than enough specific facts to suggest that the defendants in this case engaged in a scheme to retaliate against the plaintiffs, these restaurant owners, after for years they had been complaining about selective enforcement, very publicly complaining to the board, very publicly complaining to the press, that the board was acting in a way that was selectively targeting them for mistreatment differently than their comparators. And one thing that's important about this issue of comparators is that the District Court viewed that the plaintiffs had not sufficiently identified comparators. And in fact, Ember and Ember Coal Fired Pizza and the Port Restaurant and Bar identified in particular one restaurant next door shares the same airspace, shares a fence, has the same licenses, and that's really a seminal focus here is not about the number of seats or the configuration of the restaurant in terms of outdoor space. It is whether or not the restaurants that are licensed by the town share the same licenses and with the same restrictions and go through the same statutory process. And a seminal fact in this case is that you have factual affirmance that the board, solely to make a point, those are the words of a board member, hey, let's renew everyone else's licenses, but not these two, and we're going to do that solely to make a point. And what's ironic about all this is that there's been a lot of focus on the COVID-19 guidance, who had authority to enforce, who didn't, and that's the focus of the certiorari actions. But when you look at what that guidance was designed to do, okay, that guidance was designed to enforce a state of health emergency and a pandemic, okay, and the plaintiff's allegation in this case is that the board seized upon that guidance to further their scheme to put these restaurants out of business and that there were other actors in the town who made false claims upon which the board seized and weaponized to advance that through after months of non-action in violation of their affirmative duties under the licensing statutes to then fabricate a process. So the board effectively willfully thwarts a statutory process that they follow and adhere for every other licensee, but they willfully thwart and do not act and do not fulfill their statutory obligation to renew operating licenses, which Massachusetts law has very plainly said, has very plainly indicated that the denial of those licenses or the non-renewal of those licenses creates an impingement on their operating licenses, the irreparable harm for which there's simply no proper posting deprivation. So on your equal protection claim, in your complaint, what facts are alleged to show that there's a fair comparator who's being treated differently? So the Perks restaurant is an open-air restaurant that shares the same airspace. I'm not asking about what the restaurant is like. I'm asking about specifically what in your complaint establishes the comparator that is being treated differently. Yes. So there were copious complaints submitted to the town, copies of which are included in the record appendix, that demonstrate that multiple licensees in town had been violating the COVID guidance. And, in fact, that the licensees were actually adhering to misguidance given by the town. So the notion here is that the only licensees who are being investigated or disciplined or set up for this process, belated, fabricated process, five months after everyone else's licenses are renewed, are these two licensees, the plaintiffs and businessmen. And so the comparator analysis is the town is aware of other licensees that are similarly situated. They have the same entertainment license issued pursuant to the same statute for outside entertainment and inside entertainment. And attempting to try and focus on whether or not there was mere delay versus denial, in this case, the delay was a denial. Because without the entertainment license, they can't offer any entertainment, whereas the other comparators were timely issued licenses. And the board can point to no other licensee who has suffered the same selective mistreatment and delay in any of the licenses, in the issuance of the licenses. I don't know if you've really answered Judge Craddock's question. You've said there are other restaurants that had COVID violations. Yes. That's enough to show a class of one for any entity that has a COVID violation and is then brought up for board proceedings? That's an equal protection violation just alone? Not to proceed any more than that? Your Honor, respectfully, to the extent that there is one comparator, that is enough. The case law doesn't require multiple comparators. Your Honor, the class of one is not an easy thing to meet. Otherwise, we'd be very, very busy. Yes, Your Honor. So the idea is that it doesn't really establish, for the class of one purpose, a comparator. That you've identified other people who are also in violation that were not brought before the board. But it's not just the COVID-19 guidance that's at issue. That's where the focus seems to go in the search. We're just asking you. I understand. What is the evidence in the complaint that shows the class of one standard is plausibly met? So the class of one standard is plausibly met because the plaintiffs have identified at least one comparator who has outdoor entertainment, is similarly licensed, has received complaints about noise violations that were not enforced, unlike the noise violations that were enforced against the plaintiffs. There were complaints about COVID violations that were not enforced, that were enforced against only the plaintiffs. There were other complaints raised to the town regarding noncompliance with COVID-19 guidance at numerous other establishments. And, in fact, there's a photograph of the town police sitting shoulder to shoulder at a coffee table, a picnic table, outside of another establishment. Do you understand that saying that complaints were enforced against you but they weren't against someone else, a competitor, probably doesn't carry the burden for you on class of one. You've got to show that the claims were of equal merit. The board found they were. You've got to tie them a lot closer together. I appreciate that. However, the case law views that defining a comparator is, there's no set of standards for that. It's not a precise rubric. Okay? And simply suggesting that the plaintiffs did not allege enough at the pleading stage. Actually, the case law says they've got to be very close. They are very close. And the only difference would be the number of seats. Otherwise, they're entities licensed under the Liquor Control Act. They're licensed under the Entertainment Licensing Statute. They're enforced under the same liquor control act. Who had more seats? I'm sorry? Who had more seats? For example, the court has more seats than the Perks restaurant that it shares with us. Wouldn't that be a rational reason to go after one violator rather than another because they serve more customers? I disagree, Your Honor, because that would show. I understand that you might disagree as a policy matter, but for the Equal Protection Clause purposes, it sounds like a non-arbitrary reason. An additional fact that goes to the arbitrary nature of the comparator situation is that there is a factual allegation that the owner of Perks is personally friendly with the chairman of the board, Michael McCaskill, and that they are fishing buddies. And that that personal relationship has spared, despite requests, public requests, from the plaintiffs, hey, we are being singled out. This establishment right next door has multiple violations, noise violations, liquor violations, COVID violations. No effort is being taken to enforce those at the establishment next door, which shares our same airspace. They have a noise complaint. People call in and blame the port for the outdoor entertainment for the establishment right next door. And so you have a history of Ember and the port making complaints, excuse me, to- You have a First Amendment claim, too, if I read your papers correctly. Yes, Your Honor, thank you. And that's important because even if the court finds that the- Ty, there's usually some exchange that goes on here. I'm sorry. I'm having trouble hearing you. Sure. Are you making a facial First Amendment challenge? No, I'm making a retaliation argument on the First Amendment. Just retaliation. Correct, Your Honor. So plaintiffs are conceding the noise bylaw, and they're not pursuing a facial challenge to the noise bylaw, because the town's not enforcing. The town recognizes its frailty and is not enforcing it anymore. It doesn't change the irreparable harm and the nature of the deprivation of the First Amendment freedoms afforded under the Constitution, but also under the entertainment licensing statute. You have these restaurants that could not offer entertainment of any kind for more than four months until the board fabricated this process to then issue new entertainment licenses under a different legal standard that wasn't applied to any other licensee, and that goes to the comparator issue as well. So it isn't based on the number of seats.  Thank you. Thank you, Counsel. At this time, would Counsel for the Appalese Town of Harwich please introduce himself on the record to begin? You have nine minutes. Good morning, Your Honors. I may have pleased the Court, Justin Amos, on behalf of the Town of Harwich and the individually named Harwich defendants. I'd like to pick up real quick on something that my brother just mentioned in response to a question by you, Judge Kayada, that there's a First Amendment retaliation claim in this case. If there was, it's news to me, it's news to Judge Kasper, and it's news to the entire record below. There was never a First Amendment retaliation claim argued in the district court. We did not move to dismiss it because I don't see one in the amended complaint. Judge Kasper did not ask any questions about a First Amendment retaliation claim. There was no post-judgment motion by my brother saying, hey, you've dismissed all the claims, but never addressed a First Amendment retaliation claim. It is not raised in the blue brief. The first time that it seems to be cropping up is in the reply and in the argument today. I would therefore assert that it is waived, and to whatever extent it might be preserved by any of the appellate briefs, being raised in a reply is not sufficient, and not being fully developed within the appellate brief means it is also waived. With respect to the Equal Protection Class of 1 Chief Judge Barron, as you had mentioned, it is an extraordinarily narrow cause of action, and that's to avoid federalizing every single discretionary decision that's made by any local licensing authority or any local permitting authority. Here, the plaintiffs have only identified a single possible comparator, that being the perks. But as the colloquy between my brother and you, Chief Judge Barron, and Judge Kayada bears out, they have not identified with a high level of specificity, which is required under cases like Buchanan and Pagan, the comparison between these two. We've heard only about the fact that the restaurants here have made complaints against the perks, but we know nothing from the amended complaint about how those complaints were investigated by the Harwich Police Department, how they were handled by the Board of Selectmen, what discipline may or may not have been issued about COVID-19 violations of the governor's orders. We have no indication of the fact that these restaurants were the only restaurants in Harwich who had site visits by investigators from the ABCC who determined that there were, in fact, violations of the governor's COVID orders on site, which led to the hearings before the Board of Selectmen. There simply has not been sufficient identification of comparators at that high level of specificity that's needed. Let me ask you about the comparators. Obviously, we're in a 12B6 stage. Isn't some sort of discovery necessary for getting those comparators? Obviously, the complaint counsel can say, well, because of X, Y, Z reasons, but there's a lot of information he's not entitled to. If a complaint was dismissed against the comparator, how's he going to get that necessarily? How's he going to get the thinking process of what happened? Sure. So two responses to that. First and foremost, this Court has not shirked away from affirming dismissal of Class of 1 equal protection claims at the pleading stage. Pagan v. Calderon was a motion to dismiss. Naha's Realty LLC was a motion for judgment on the pleadings. Clark v. Bossier was a motion to dismiss. So you still have to make that point. There's some cases of summary judgment. There's others that die at the 12B6 stage. Sure. As well as because, at least for the time being. Where would we draw the line as to what can be considered 12B6 or should it go forward? I think you have to establish enough to plausibly allege an entitlement to relief. And in those three cases, for example, there wasn't sufficient identification, which is not an issue about whether a party has the opportunity to plead it at the pleading stage. It's an acknowledgment of the high level of specificity to ensure that this claim does not open the floodgates to every single time that anyone says the government has treated them differently from their neighbor or the person down the street. We would be creating a federal cause of action. So at least the complaint should have stated, for example, in good faith, we believe that the complaint against the comparator was not attended to or was dismissed summarily without any further elaboration versus ours. Something like that. Something like that. But as well, to the point about whether these plaintiffs could have identified this information, with respect to the town at least, we're a public entity, which means that we have to turn over documents in response to public records requests, which were done in this case. My brother conducted extensive pre-suit discovery through FOIA requests. So he did have the tools to be able to plead that if needed. He absolutely had the tools to plead that here based on the documents he could have and in some instances did obtain. But it also doesn't take into account the second prong of class of one, which is similar to the conscious shocking behavior that's required under the substantive due process prong. That's the Pagan case, which dovetails into the issue of whether there has been stated a substantive due process claim. And here your position would be, in Judge Gaspard, this is not shocking to the conscience. Absolutely, Your Honor. At least for substantive due process, it's an extremely high bar. Exactly, Your Honor. And this Court has done that repeatedly, especially in substantive due process claims that are arising out of permitting and licensing context. The Court hasn't been quite specific enough to say that it's an even higher burden in those, but I believe the terms that we've used or that this Court has used is that they're hen's teeth rare. As to the procedural due process claim, there's clearly adequate post-deprivation remedies here. My friend filed not one but two separate lawsuits in state court seeking certiorari review of the underlying decisions. There's also the panoply of state law claims, both under statutory, constitutional, and common law. On those cases, state review cases are still ongoing, am I correct? They are no longer ongoing. Well, two of them are no longer ongoing. The two certiorari claims as to the entertainment licenses were decided in the town's favor in the Superior Court about two weeks ago, maybe three weeks ago now. They were affirmed by the Massachusetts Appeals Court, which I had submitted in a 28-J letter. There was a separate challenge. They could still go to the SJC. There's discretionary ability to seek further appellate review, which I believe expires next week. So they're still within their time to seek. But there are tiers of review at the state level. Yes. There's one more tier of review to seek discretionary further appellate review at the SJC. There are state court claims here that were dismissed. Yes, Your Honor. Our general rule, in fact, we reiterated it very recently, is if you're throwing out the federal claim on a motion early in the case and a fortiori on a motion to dismiss, pendent state law claims if the only basis for their jurisdictional state position in the court was pendent, should not be dismissed with prejudice. Yes, Your Honor. I appreciate the opportunity to address that before my time runs out. The general rule is exactly as Your Honor has stated. Typically, if the state law claims fall at the early stage when the federal claims fall, it's a better practice to dismiss without prejudice. But the district court still retains the discretion, and this court reviews for an abusive discretion. That was your decision, Judge Keada, in the Science for Jesus v. Pembroke, New Hampshire case. The non-exhaustive factors that this court has often looked to is the novelty of the state law claims, how tied they are to the federal claims, is it a legal versus a factual decision, and then, as Your Honor said, where in the proceedings are we? And with this case in particular, I would also posture another one, which is that the plaintiffs chose this forum. This is not a case like the Robinson case, which was recently out of this court, or the Ritchie case, recently out of this court, which were removed from state court. The plaintiffs here filed suit in federal court. The plaintiffs invoked supplemental jurisdiction, and it would create a very perverse incentive for plaintiffs to file combined federal and state claims in federal court. They invoke the supplemental jurisdiction, and if they overcome a motion to dismiss, then great. They get to stay in their chosen forum. But if they lose the motion to dismiss, it's okay because I get to go back to state court and assert this in a whole new forum. So given the context of this case in particular, given the fact that they overlap entirely with the federal claims, and to that point as well, in Robinson, at least, there was an affirmative. Have we ever been attentive? I'm not saying we shouldn't be, but have we ever been attentive to that distinction you're drawing? I have not found any cases that have discussed that, Your Honor. I wish I had that I could say, too. But I do think that especially given that the other four Rodriguez factors are not exclusive and they are factors themselves, it's not elements, that this court can recognize that to avoid forum shopping and avoid gamesmanship, that we should take into account, though not necessarily dispositive, the fact that the plaintiffs chose the forum and are now trying to get out of that forum because the forum decided adversely against them. And that would be, I think, really trying to incentivize gamesmanship. I'm happy to answer any other questions, but otherwise, I'm happy to rest on our papers. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, would counsel for the Appellee Sluis please introduce himself on the record? You have four minutes. Members of the court, may it please the court, Charles Sabbat, appearing for the defendant, Appellee Gail Sluis. My client, Gail Sluis, is a private citizen. She is not a public official in the town of Harwich or anywhere else, for that matter. She is not a member of any board. She is merely a principal in a restaurant in Harwich known as 400 East. There are no allegations in this case aside from the one that she made a complaint to the Harwich Police Department on Memorial Day weekend of 2020. But there are no other allegations that she ever promoted any complaints against these plaintiffs, that she ever complained to any of the licensing authorities with respect to these plaintiffs, that she did anything in any way whatsoever to interfere with their business, their licenses, their operations, their entertainment licenses, or whatever it may be. The only allegations that one can call from this amended complaint that's before us is that she had an employee who was a member of the noise, so-called ad hoc noise committee in the town of Harwich, but no allegation that she ever influenced that committee in any way. Secondly, that she received ex-party communications from town officials, but there's never been any explication in this complaint about what those communications were or that she ever did anything as a result of those communications. And thirdly, there's an allegation that she was privy to some non-public internal memorandum in the town of Harwich, which I argued and showed in my brief, was not non-public. It was, in fact, a public document. And again, no allegation that she ever acted as a result of having allegedly seen this non-public document or did anything in any way whatsoever to interfere with or impact upon these plaintiffs. One of the things that I've stressed in my brief that I would ask the court to be attentive to, and that is that the main allegation against her, which is the defamation count, is count six, the final count in this complaint. Every other count incorporates by reference all of the prior allegations. So none of the prior allegations consist of the defamation count. So even if you were to find that there's a sufficient allegation here of defamation, it doesn't apply to and doesn't support or justify the allegations in any of the prior complaints against my client. With respect to the specific federal claim, which is count one, there's no indication whatsoever that my client coerced anybody or that she acted under color of law. You've addressed the class situation, which the lower court did as well under 1985. Under the Massachusetts Civil Protection Act, no allegation that she coerced anybody. She's not a public official, had nothing to do with their licenses. Under the other two common law counts of interference with economic relations or with conspiracy, again, no evidence that she ever interfered in any way whatsoever, no evidence that she conspired with anyone. With respect to the final count, count six, the district court was correct in concluding that the allegations in that paragraph, the one paragraph that applies to her in that count, were insufficient to support a defamation claim. They were merely conclusions. There were no quotations. There was no explication as to what the statements were, none of that. And under the Massachusetts state law, in order to survive a motion to dismiss in a defamation act, you must specify what the defamation was. That didn't occur in this case. And what happens now is that the plaintiffs now are attempting to insert, and they attempted below by way of their opposition, to insert into the record the rendition of the tape of their call to the police department. But that tape was never mentioned, nor any of the remarks that were supposedly in that call ever mentioned in the complaint. So for those reasons, I would ask the court to affirm the judgment of the district court. Thank you very much. Thank you, Counsel. At this time, Counsel for Appley O'Neill, please introduce yourself on the record to begin. You have a two-minute. Good morning. May it please the Court, Dana Kurhen for Patricia O'Neill. I agree with everything the town and Defendant Sluis argued, and I have addressed the merits of all of the issues extensively in my brief. I think there's a more fundamental problem, however. There is no appellate argument in the opening brief as to O'Neill. I don't know what the claim of error is. She's mentioned a couple of times in that brief, and it's sort of assumed that she participated in some conspiracy, but there's no specific argument, and I pointed that out in my brief. In the reply brief, she's mentioned a couple of times on page 19, and again, conclusory statements, but no specific argument as to what the error was that the judge made here. So I think that's really fatal to the plaintiff's claim. And I'm not sure. Ms. O'Neill is described as an influential neighbor. She's not a public official. She doesn't own a restaurant. She has no connection to this. She's alleged to have made complaints on some unspecified dates, and I don't know where this gets the plaintiffs, but she certainly should not have been dragged into this, and we're asking for costs and attorney's fees for this. This is a completely frivolous appeal. We shouldn't be here. I shouldn't be up here today, and she shouldn't have to litigate these claims. Unless there are any further questions from the court, I will simply ask that this court affirm the judgment. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. May it please the court, Ray Tomlinson again on behalf of the plaintiff's appellants. Judge Helby, I want to return to a question that you asked Attorney Amos regarding discovery necessary to support the issue about comparators, and the comment from the bench was that plaintiffs had all these tools available to them. The only tool the plaintiff had available to them was a public records request, and they made numerous public records requests, and the town very selectively chose which public records requests it was going to respond to, and that was decisive. It was decisive because when plaintiffs asked about selective claims or complaints made against other licensees for noise or for COVID-19 guidance violations, the response was not from the public records officer of the town. It was from the defendant, town administrator Joseph Powers, who is not the public records officer, who invoked the litigation privilege under the public records statute to say, you're not getting any of this information. Couldn't you file the complaint and say to the best of our ability, we were able to obtain X, Y, Z, we believe there's more, and we would like to be able to get these documents in order to amend the complaint? I've seen that done before. And that has been done, but that can't be done, unfortunately, until the state records custodian decides that issue, and that was after this complaint was filed. But you could have asked perhaps for a court order from Judge Casper. Here's our complaint. We understand to the best of our ability this is what we were able to obtain, but we need an order for those particular things. And I did, Your Honor. In the very highly detailed Rule 16 memorandum, plaintiffs went through the factual discovery that they needed. Modest discovery. There's no dispute from Defendants Sluis or O'Neill that they didn't own any of the quote-unquote anonymous social media accounts. Are you still, as you stand here today, is your client still pressing its claims against Defendants Sluis and O'Neill? Yes, with respect to the defamation and the conspiracy to influence state action, yes. And so why didn't you present an argument regarding O'Neill in your reply brief or in your opening brief, your blue brief? The argument against O'Neill centers on the fact that the court essentially did not allow any modest discovery to fill the inferential gaps necessary to make the reasonable inference that Ms. Sluis, who by the way, excuse me, Ms. O'Neill, who by the way was a 12C judge on the plaintiffs. That's saying that the complaint didn't state a cause and you needed discovery to state a claim. Correct. But you're pressing the claim. I'm pressing the claim because the plaintiffs were. You need to do a discovery to see if you can state an amended claim. Because, again, the court narrowly focused on what particular facts do not support an element of the claim. And that is the fundamental basis and dispute that the plaintiffs have in this case, which is in the totality of the circumstances and the allegation that Ms. O'Neill owns one or more of these 25 anonymous social media accounts. Thank you. Those anonymous social media accounts, we can't, without discovery of that information, we have no ability to be able to discover that information. And it's exclusively held by the defendants. And it's not frivolous or unreasonable to suggest that, especially when she hasn't denied that she doesn't own those. Thank you very much. Thank you very much. Thank you, counsel. That concludes argument.